UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

DAVID DARNELL NELSON,

        Petitioner,

v.                                                                            Case No. 18-cv-220-pp

STEVEN R. JOHNSON[1],

        Respondent.

---

**ORDER GRANTING RESPONDENT'S MOTION TO DISMISS (DKT. NO. 30), DISMISSING CASE UNDER 28 U.S.C. §2244(d) AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

---

On April 26, 2017, the petitioner, who represents himself, filed a petition for a writ of *habeas corpus* in the Western District of Wisconsin, challenging his 2012 conviction in Milwaukee County Circuit Court for second-degree sexual assault of a child. Dkt. No. 1. Judge Peterson—to whom the case was originally assigned—screened the petition and questioned whether the petitioner had properly presented his claims to the state courts. Dkt. No. 12 at 3. He ordered the respondent to respond within sixty days. Id. After an extension of time, the

---

[1] When the petitioner filed his petition, he was at Waupun Correctional Institution. A check of Wisconsin's Inmate Locator reveals that the petitioner currently is in custody at the Milwaukee Secure Detention Facility, WISCONSIN DEP'T OF CORRECTIONS, available at https://appsdoc.wi.gov_/lop/home.do (last visited Feb. 21, 2020). Steven R. Johnson is the warden of that institution. https://doc.wi.gov/Pages/OffenderInformation/AdultInstitutions/MilwaukeeSecureDetentionFacility.aspx (last visited Feb. 21, 2020). Under Rule 2(a) of the Rules Governing Section 2254 Cases and Fed. R. Civ. P. 25(d), the court has updated the caption to reflect the appropriate respondent, and will direct the clerk to update the docket.

1

respondent filed a motion to transfer the case to the Eastern District of Wisconsin. Dkt. No. 21. Judge Peterson granted that motion and on March 13, 2018, the clerk's office assigned the case to this court. On August 13, 2018, the respondent filed a motion to dismiss, arguing that the petition was untimely and that the petitioner had not exhausted his state remedies. Dkt. No. 30. The court will grant the motion and dismiss the case, and it declines to issue a certificate of appealability.

**I.    Background**

    A.    State Case

On March 17, 2012, the petitioner was charged in Milwaukee County Circuit Court with second-degree sexual assault of a child. Dkt. No. 31-2 at 1; see also State of Wisconsin v. David D. Nelson, Milwaukee County Case Number 2012CF001222, available at https://wcca.wicourts.gov/. Less than a week later, the petitioner appeared with attorney Michael Backes and waived his preliminary hearing. Id. Five days later, the petitioner pled not guilty. Id. At a scheduling conference on April 26, 2012, the trial court set a change-of-plea hearing for May 10, 2012. Id. Attorney Michael Backes appeared at the May 10 hearing. Id. Although the petitioner was in custody, he did not appear. Id. The court adjourned the plea/sentencing hearing to May 15, 2012. Id. At the May 15 hearing, the court accepted the petitioner's guilty plea and found the petitioner guilty. Id. The court imposed a term of three years' incarceration followed by two years of extended supervision to be stayed if the petitioner completed a three-year probation term. Id. The court entered judgment on May

2

22, 2012. Id. The docket reflects that in February of 2014, the court revoked the petitioner's probation. Id.

In August of 2014, the petitioner—representing himself—filed a motion for sentence credit. The state court denied the motion the same day. Id. The state court docket shows that after that August 14, 2014 motion for sentencing credit, the only other document the petitioner filed was a letter in December 2017. Id.

B. Federal *habeas* petition

The petitioner filed this *habeas* petition on April 26, 2017 in the Western District of Wisconsin. Dkt. No. 1. The petitioner indicated that he had pled guilty to the charged crime of second-degree sexual assault, but explained that "the judge threatened to send me to prison for 60 years on 5-15-2012 so I didn't understand my rights I didn't want to go to prison for 60 years so I sign some paper I didn't know or understand and I found out that I sign[ed] a plea of 5 years = 3 in 2 out." Dkt. No. 1 at 2. In response to the question on the petition that asked if he appealed from the conviction, the petitioner responded, "I don't know but maybe not but I wanted to if I knew my rights at the time. I'm mentally ill. I take medication befor[e] I got convicted." Id.

As Judge Peterson wrote in his August 23, 2017 screening order, the petition "appears to raise three grounds for relief: (1) [the petitioner] is actually innocent; (2) his plea was not knowing and voluntary; and (3) his trial counsel was ineffective—his attorney 'did not speak up for [him].'" Dkt. No. 12 at 2 (citing dkt. no. 1 at 7). Judge Peterson observed that the petitioner had filed "a

3

list of claims he wishes to bring in this case" but that those claims "concern[ed] conditions of confinement and are not properly raised in a petition for a writ of habeas corpus." Id. at 3. Judge Peterson further noted "a few potential problems with [the petitioner's] petition." Id. While noting that the petitioner had not exhausted his state-court remedies, Judge Peterson allowed him to proceed past screening based on his claim of actual innocence. Id. at 4-5. Judge Peterson advised the petitioner that "he will likely have to demonstrate cause and prejudice to maintain this action." Id. at 5.

The respondent filed for an extension of time to answer, dkt. no. 19, and later a motion to transfer to the Eastern District of Wisconsin, dkt. no. 21. Judge Peterson granted the motion to transfer on February 9, 2018, citing the fact that the petitioner was sentenced in the Eastern District of Wisconsin and was in custody in the Eastern District of Wisconsin. Dkt. No. 22 at 1. This court received the case on March 13, 2018. At the time of transfer, the petitioner had a pending motion to appoint counsel. Dkt. No. 17. This court issued an order on June 8, 2018 denying without prejudice the petitioner's motion for counsel, informing him that the court would not consider appointing counsel unless he provided information showing that he had tried to find a lawyer on his own. Dkt. No. 27. The respondent filed his motion to dismiss on August 13, 2018. Dkt. No. 30.

C. Respondent's Motion to Dismiss, Dkt. No. 30

The respondent argues that the petitioner filed his petition after the one-year statute of limitations had elapsed. Dkt. No. 31 at 2 (citing 28 U.S.C.

4

§2244(d)(1)(A)). He recounted that the circuit court had sentenced the petitioner on May 15, 2012 and that because the petitioner had not filed a direct appeal, his conviction became final twenty days after his sentencing—that is, on June 4, 2012. Id. at 3. The respondent contends that the petitioner's one-year period for filing for federal *habeas* relief expired on June 4, 2013. Id. The respondent argued that the petitioner's August 7, 2014 motion for sentence modification did not toll the limitations period because it already had expired and argued that the court should not equitably toll the limitations period. Id. at 4. The respondent also urged the court to dismiss the petition because the petitioner had not exhausted the remedies available to him in state court. Id. at 5.

On August 28, 2018, the petitioner filed a one-page, handwritten letter asking the court to dismiss the respondent's motion to dismiss. Dkt. No. 32. He argued that the respondent "ha[d] not been responsible and did not respond to Hon. Pamela Pepper the United State district Judge to extend its deadline by 30 days to August 13, 2018 dated the 11th day of July, 2018." Id. The petitioner wrote:

> I respectfully ask the Judge . . . accept my motion to drop all charge[s] against me for second degree of sexual assault of a child. Because in my discovery I had not use[d] any force, threat, or violence and the victim admit she lie to me about her age and she never said I raped her. She said I was a good guy. I also was taking medication for my mental health disorders at the time. I should have never got charge with the crime. The opposition is in charge of the movements in the Department of Corrections. I can't get my discovery, so can you please get my discovery and investigate yourself.

Id.

About a month later, the petitioner filed a second letter. Dkt. No. 33. This letter stated that

> I am mentally ill and my plea was coerced and officers failed to read me my rights. If I was not mentally ill I would have known how and when to file a statutory one-year period of limitation for seeking federal habeas corpus review. I have many mental disorders and learning disability. My Attorney Michael J. Backes was awair that I was not educated at the time of my conviction and the prosecuting agency Attorney Paul Leonard Tiffin was awair that I was mentally ill and take medication but they did not care about my illness or and disorder. If I was smart or intelligent and did not have mental disorders I would have know my rights and I would have know how much time I have to file a writ of habeas corpus. I didn't know and my Attorney Michael J. Backes job was to do all these thing for me if he knew it was benefitual for me. But my Attorney did not represent me as a Attorney supost to do. I didn't know what waive is and I did understand anything that was going on. I did not know how to exhaust my state court remedies I was mentally ill and my Attorney job and duty to exhaust my state court remedies because I was mentally ill. How can a mentally ill person or citizen exhaust his or her state court remedies or file a writ of habeas corpus at the correct time, day or year while mentally unstable or sick. I tried to contack a Attorney because I cant represent myself under my mentally ill disorder or conditioning The Milwaukee County court staffs know I was mentally ill and taking medication they all did me wrong I want justic please.

Id. (spelling errors in original).

Attached to the petitioner's letter are three documents. Dkt. No. 33-1. The first document is an August 29, 2018 letter from the law firm of Piccione, Keeley & Associates, Ltd. in Illinois. Dkt. No. 33-1 at 1. The letter shows that the petitioner contacted Attorney John J. Piccione about representing him in this case. Id. The letter indicates that Attorney Piccione was not able to represent the petitioner. Id. The next two pages are the petitioner's letter to the lawyer, asking for representation. Id. at 2-3.

6

## II. Analysis

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") instituted a one-year statute of limitations for petitioners seeking federal *habeas* relief. 28 U.S.C. §2244(d)(1). The one-year period begins to run from the latest of the following four events

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or law of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. §2244(d)(1)(A)-(D). The petitioner has not argued that any state action prevented him from filing this *habeas* petition. He has not argued that he is asserting a right newly recognized by the Supreme Court. He has not asserted that his *habeas* claims rely on newly discovered evidence. That leaves 28 U.S.C. §2244(d)(1)(A), which provides that the one-year limitations period begins to run from the date the petitioner's conviction became final by the conclusion of direct review or the expiration of the time for seeking such review.

The petitioner did not file a direct appeal to the Wisconsin Court of Appeals. Under Wis. Stat §809.30(2)(b), the petitioner was required to file a notice of intent to appeal "[w]ithin 20 days after the date of sentencing or final adjudication"—that is, by June 4, 2012. The petitioner did not file a notice of intent to appeal within that twenty days; he did not file a petition for review at all. That means that his conviction became "final"—and his one-year limitations period began to run—on June 4, 2012. See Gonzalez v. Thaler, 565 U.S. 134, 150 (2012) ("with respect to a state prisoner who does not seek review in a State's highest court, the judgment becomes "final" under §2244(d)(1)(A) when the time for seeking such review expires[.]"). The petitioner had one year, until June 4, 2013 to file his federal *habeas* petition. The petitioner did not file this petition until April 26, 2017—almost four years later.

AEDPA's one-year limitation period can be "tolled," or paused, in certain circumstances. AEDPA has a statutory provision for "tolling" the one-year clock: "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. §2244(d)(2). The provision does not help the petitioner because he did not properly file any applications for post-conviction or collateral review *before* the one-year limitations period expired—*before* June 4, 2013. Over a year *after* the petitioner's one-year clock ran out—in August of 2014—the petitioner filed a motion for sentence modification in Milwaukee County Circuit Court. But post-conviction motions filed after the one-year

8

period expires "ha[ve] no tolling effect whatsoever on the AEDPA statute of limitations." Graham v. Borgen, 483 F.3d 475, 482-83 (7th Cir. 2007).

A court may invoke the doctrine of equitable tolling where a petitioner shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010). "Equitable tolling is an extraordinary remedy and so 'is rarely granted.'" Obriecht v. Foster, 727 F.3d 744, 748 (7th Cir. 2013) (quoting Simms v. Acevedo, 595 F.3d 774, 781 (7th Cir. 2010)). "A petitioner bears the burden of establishing both elements of the *Holland* test; failure to show either element will disqualify him from eligibility for tolling." Mayberry v. Dittman, 904 F.3d 525 529-30 (7th Cir. 2018) (citing Menominee Indian Tribe of Wis. v. United States, ___U.S.___, 136 S.Ct. 750, 755-56 (2016)).

"The realm of equitable tolling is a highly fact-dependent area in which courts are expected to employ flexible standards on a case-by-case basis." Socha v. Boughton, 763 F.3d 674, 683 (7th Cir. 2014) (internal quotations omitted). While equitable tolling is "rare" and "'reserved for extraordinary circumstances far beyond the litigant's control that prevented timely filing[,]'" id. (quoting Nolan v. United States, 358 F.3d 480, 484 (7th Cir. 2004)), a district court must "evaluate the circumstances holistically, considering 'the entire hand that the petitioner was dealt' rather than taking each fact in isolation." Gray v. Zatecky, 865 F.3d 909, 912 (7th Cir. 2017) (quoting Socha, 763 F.3d at 686)). A petitioner must show more than just that his

9

circumstances "may have made it more difficult for him to file a petition for habeas corpus[.]" Carpenter v. Douma, 840 F.3d 867, 873 (7th Cir. 2016).

While the petitioner did not specifically mention the doctrine of equitable tolling, the court believes that he is arguing that his mental illness constituted an "extraordinary circumstance" that prevented him from timely filing his petition. The court will evaluate that claim under the equitable tolling doctrine.

As to the first Holland factor, the state court docket and the record in this case show that the petitioner has not diligently pursued his rights. The petitioner did not appeal his conviction; he did not tell the court of appeals that his guilty plea was not knowing or voluntary. Nor did he tell the court of appeals that his trial counsel was ineffective. He did not file a *habeas* petition or a motion for post-conviction relief in state court in the two years or so after his conviction.

The petitioner blames this fact on his counsel; he says he didn't know how much time he had to file for a writ of *habeas corpus* "and my attorney Michael J. Backes was to do all these thing[s] for me if he knew it was beneficial for me. But my attorney did not represent me as an Attorney supos[sed] to do." Dkt. No. 33 at 1. The petitioner says that his failure to appeal was his lawyer's fault, but he doesn't explain why. He doesn't say whether his lawyer explained his appeal rights to him, or whether he asked his lawyer to file an appeal for him. He doesn't assert that his lawyer blew the appeal deadline by accident, or deliberately refused to file an appeal despite

being asked. He indicated only that he was suffering from mental illness and that his attorney didn't tell him to appeal or file a motion. Dkt. No. 1 at 8.

Even if the petitioner could identify a mistake that his attorney made, "a 'garden variety claim of attorney negligence' or 'excusable neglect' is insufficient" to warrant equitable tolling. Obriecht, 727 F.3d at 749 (quoting Holland, 560 U.S. at 652). "'A lawyer's ineptitude,' such as his failure to meet a filing deadline . . . is garden variety and 'does not support equitable tolling.'" Id. (quoting Lee v. Cook Cty., 635 F.3d 969, 972-73 (7th Cir. 2011)).

Nor has the petitioner explained why it took him over two years from his May 2012 conviction to file his motion for a sentence modification in state court. The petitioner did nothing to pursue his rights for fifteen months after he was sentenced. Nor does he explain why he took no action between August 2014, when the state court denied his motion for a sentence modification, and April 2017 when he filed this federal *habeas* petition. Again, almost two and a half years elapsed without the petitioner taking steps to pursue his rights. Holland does not require a petitioner to show "maximum feasible diligence" but it does require a petitioner to show "reasonable diligence." Holland, 560 U.S. at 653. The petitioner has not satisfied the first Holland factor—he has not shown that he was diligently pursuing his rights.

Because a petitioner must show both elements of the Holland test to warrant equitable relief, Carpenter, 840 F.3d at 870, the court's analysis could end there. For the sake of completeness, the court will briefly consider whether the petitioner has stated the "extraordinary circumstances" necessary to justify

11

equitable tolling. The petitioner repeatedly has cited his mental illnesses as the reason why he decided to plead guilty, why he did not appeal and why he did not know when to file for federal *habeas* relief. "Many cases have concluded that an applicant's mental limitations can support equitable tolling." Perry v. Brown, No. 19-1683, 2020 WL 702834 (7th Cir. Feb. 12, 2020) (citing Mayberry, 904 F.3d at 530; Schmid v. McCauley, 825 F.3d 348, 350 (7th Cir. 2016); Davis v. Humphreys, 747 F.3d 497, 498 (7th Cir. 2014)). Mental illness may serve as an extraordinary circumstance to toll the limitations period "'only if the illness *in fact* prevents the sufferer from managing his affairs and thus from understanding his legal rights and acting upon them.'" Mayberry, 904 F.3d at 530 (quoting Obriecht 727 F.3d at 750-51) (emphasis in Obriecht).

The only specific reference to any mental or emotional disorder that the petitioner has made in this court is his assertion at page 6 of the petition that he "suffer[s] from antisocial disorder," which means that he doesn't know how to associate with people. Dkt. No. 1 at 6. He mentioned at page 7 of the petition that during court, his mental illness caused him to panic and "suffer P.T.S.D. flash back memory of movie that people never came back home after court and die in prison so I thought it was going to happen to me so I lose control of myself and said something." Id. at 7. He says that he has taken medication for his mental illnesses, that he took it before he was charged and that the parties in state court, including his lawyer, knew that he was mentally ill. He has provided no proof of any of those facts. He has not provided medical records, or prescriptions. He has not told the court what medications he was taking, or

12

why those medications did not help him. He has not demonstrated to the court that his mental illness or illnesses constitute an "extraordinary circumstance."

If the court were convinced that the petitioner had diligently pursued his rights, it might consider appointing a lawyer to assist the petitioner in presenting evidence regarding his mental illnesses. See Schmid, 825 F.3d at 350. But given the petitioner's extreme tardiness in filing his federal petition, appointing a lawyer would be futile.

The petitioner also asserts his actual innocence. "[A]ctual innocence, if proved serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or . . . expiration of the statute of limitations." McQuiggin v. Perkins, 569 U.S. 383, 386 (2013). But "tenable actual-innocence gateway pleas are rare." Id. For a claim of actual innocence to excuse an untimely petition, "a petitioner 'must show that it is more likely than not that no reasonable juror would have convicted him in light of . . . new evidence.'" Id., 569 U.S. at 399 (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)).

The petitioner has provided *no* evidence supporting his claim that he is actually innocent; he simply says that he is. He has not provided any additional evidence since Judge Peterson issued his screening order. Judge Peterson's statements remain true: "[the petitioner's] actual innocence claim is on thin ice: he essentially contends that he is innocent because he had sex with a child with her consent. That is not a substantive defense to the offense." Dkt. No. 12 at 5. The petitioner's "evidence" is not enough; the actual

13

innocence exception requires "'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" Id. at 401 (quoting Schlup, 513 U.S. at 316).

The petitioner filed this petition over three and a half years after his one-year limitations period had expired. His state post-conviction motion was not filed in time to trigger AEDPA's statutory tolling exception. He did not ask the court to equitably toll his petition, but the court's independent review shows that the petitioner did not diligently pursue his rights, he has not offered evidence that his alleged mental illnesses constituted an "extraordinary circumstance" and he has not offered the evidence necessary to show actual innocence. The court will dismiss the petition under 28 U.S.C. §2244(d)(1)(A).[2]

The court also notes that in his August 28, 2018 letter, the petitioner argues that the respondent did not timely answer or otherwise respond to the petition. Dkt. No. 32. The court perceives that the petitioner is arguing that the respondent was required to *answer* the petition by the deadline of August 13, 2018, and that because the respondent filed a motion to dismiss rather than an answer, the court should not entertain the motion. But Fed. R. Civ. P. 12(a) requires a party who has been sued to file "a responsive pleading;" it does not require that pleading to be an answer. A defendant may file a motion to dismiss

---

[2] Because the court is dismissing the petition as time-barred, it will not address the respondent's additional, alternative argument that the petition must be dismissed for failing to exhaust his available state remedies.

14

in lieu of an answer. <u>Von Germeten v. Planet Home Lending, LLC</u>, No. 17-cv-167-pp, 2019 WL 2234577, at *2 (E.D. Wis. May 23, 2019). The respondent filed his motion to dismiss by the August 13, 2018 deadline, as required by this court's order and by the rules.

## III.  Certificate of Appealability

Under Rule 11(a) of the Rules Governing Section 2254 Cases, the court must consider whether to issue a certificate of appealability. A court may issue a certificate of appealability only if the applicant makes a substantial showing of the denial of a constitutional right. <u>See</u> 28 U.S.C. §2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists could debate whether (or for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." <u>Slack v. McDaniel</u>, 529 U.S. 472, 494 (2000) (internal quotations omitted). The court declines to issue a certificate of appealability because no reasonable jurist could debate that the petitioner's petition should be dismissed as untimely under 28 U.S.C. §2244(d).

## IV.  Conclusion

The court **ORDERS** that the Clerk of Court shall substitute Steven R. Johnson for respondent Brian Foster.

The court **GRANTS** the respondent's motion to dismiss. Dkt. No. 30.

15

The court **ORDERS** that the petition for writ of *habeas corpus* is **DISMISSED** as time-barred under 28 U.S.C. §2244(d).

The court **DECLINES TO ISSUE** a certificate of appealability.

Dated in Milwaukee, Wisconsin this 3rd day of March, 2020.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**
